UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JAMES D. HILLS,

                    Plaintiff,

       v.

PRAXAIR, INC., AETNA, INC., BROADSPIRE
SERVICES, INC., CRAWFORD & COMPANY,
INC., OLD REPUBLIC INSURANCE COMPANY,
STEVE ANGEL, RONALD WILLIAMS, MARK
BERTOLINI, KEN MARTINO, ALDO ZUCARO,
JAMES BREEDLOVE, JOHN DAY, SALLY
SAVOIA, RICHARD PETRONIO, GARRY
BREITBACH, LINDA MORGAN, LEONARD
KAPLAN, CONNI KRYSIAK, GORDON
STEINAGLE, DAWN IMMOHR, CHRISTOPHER
TIBERIO, NICOLE RUDOLPH, KEITH WESLEY,
DEANA JUNE, ERIE CLAVELL, MELVIN
BROTHMAN, GINGER SCHROEDER, LINDA
JOSEPH, SUSAN DUFFY, and CORY
LOUDENSLAGER,

                    Defendants.

**DECISION AND ORDER**
11-CV-678S

## I. INTRODUCTION

Plaintiff James D. Hills brings this employment discrimination action pursuant to 42

U.S.C. §§ 1981, 1983, 1985, and 1986, as well as the Americans with Disabilities Act of

1990, 42 U.S.C. §§ 12112-12117 ("ADA"), the Health Information Portability and

Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996) ("HIPAA"), and

state law.  Plaintiff's claims arise out of his employment with Praxair, Inc., during which

time various defendants allegedly interfered with his medical treatment, denied him

benefits and accommodations, released confidential medical information, and ultimately

terminated his employment.  Presently before this Court are motions to dismiss or,

alternatively, for judgment on the pleadings by eight groups of defendants representing the 30 individuals and entities against whom Plaintiff brings his claims.  These groupings, and their accompanying motions are as follows:

•      Susan Duffy and Cory Loudenslager (the "Duffy Defendants") jointly move to dismiss.  (Docket No. 13.)

•      Linda Joseph and Ginger Schroeder (the "Joseph Defendants") jointly move to dismiss.  (Docket No. 14.)

•      Praxair Inc., on behalf of itself and Steve Angel, James Breedlove, Sally Savoia, John Day, Christopher Tiberio, Dawn Immohr, Richard Petronio, Garry Breitbach, Linda Morgan, Connie Krysiak, Dr. Gordon Steinagle (collectively "Praxair") moves to dismiss.  (Docket No. 19.)[1]

•      Broadspire Services, Inc., on behalf of itself and Crawford & Company, Inc., Ken Martino, Keith Wesley, Eric Clavell, Deana June (collectively "Broadspire") moves to dismiss.  (Docket No. 24.)

•      Old Republic Insurance Company, on behalf of itself and Aldo Zucoro (collectively "Old Republic") moves to dismiss.  (Docket No. 36.)

---

[1]Although defendant Nicole Rudolph is not part of Praxair's motion, Praxair has stated that as a former employee of Praxair, Inc., its motion effectively includes her.  Praxair's motion observes that Plaintiff has not served process on Rudolph.  Improper service can form a basis of dismissal, provided a plaintiff is first provided the opportunity to cure this deficiency.  See Thompson v. Maldonado, 309 F.3d 107, 110 (2d Cir. 2002) (vacating district court's dismissal of complaint where plaintiff was not given prior notice).  Plaintiff states that the act and costs of pursuing his complaint have been overwhelming and that service of process has been carried out as he is able.  Plaintiff has not moved for in forma pauperis status.  Given that fact, Plaintiff's financial limitations do not excuse his obligation to timely inform Rudolph of his claims against her.  In any case, this Court has considered Plaintiff's complaint against Rudolph, and finds that there are no facts which distinguish her from other defendants as to whom dismissal is appropriate.  Having been put on notice by Praxair's motion to dismiss, and Praxair's assertion that its arguments would apply equally to Rudolph, this Court will exercise its power to dismiss a complaint sua sponte for failure to state a claim, for the reasons provided for in this opinion.  See Negron v. City of N.Y., No. 10-CV-2757 (RRM)(LB), 2011 WL 4729754, at *1 (E.D.N.Y. Oct. 6, 2011) (citing Wachtler v. Cnty. of Herkimer, 35 F.3d 77, 82 (2d Cir. 1994)) (dismissing claims against non-appearing defendant sua sponte where other defendants' motion to dismiss argued claims were non-actionable).

•       Aetna, Inc., on behalf of itself, Ronald Williams, and Mark Bertolini (collectively "Aetna") moves to dismiss.  (Docket No. 39.)

•       Leonard Kaplan moves for judgment on the pleadings.  (Docket No. 46.)

•       Dr. Melvin Brothman moves to dismiss.  (Docket No. 49.)

As discussed below, these motions are granted and Plaintiff's claims are dismissed, with the partial exception of the claims against Praxair, Inc. and Aetna, Inc.

Prior to reaching the grounds for this conclusion, this Court must address Plaintiff's response, dated October 17, 2011, which, while having crossed out the words "FIRST AMENDED COMPLAINT" is, in fact, an amended complaint.[2]  Plaintiff has even attached a copy of his original August 11, 2011 complaint to his response, in partial compliance with this Court's local rules.  See L.R. 15(a).

Plaintiff's amended complaint changes none of the substantive claims from the original complaint, but does add a table detailing which of the various counts go against which defendants.  It also includes, underneath each numbered paragraph, a detailed listing of all the counts to which that factual allegation relates.  Defendants, after initially arguing in their motions that Plaintiff's complaint failed to differentiate between them or specify as to whom his claims applied, have generally treated Plaintiff's response as an amended pleading.

District courts have broad discretion to grant a party leave to amend its pleadings and the federal rules dictate that leave to amend is freely granted when justice so requires. See Fed. R. Civ. P. 15 (a)(2).  What this Court interprets as a proposed amendment

---

[2]Indeed, the bottom of the first page, and every page thereafter, states "FIRST AMENDED COMPLAINT."  (Docket No. 27.)

substantially clarifies Plaintiff's claims.   Further, defendants' responses to the revised pleading demonstrates that they would suffer little prejudice from accepting Plaintiff's submission as an amended complaint.   Accordingly, this Court will consider Plaintiff's "Response to Motions" (Docket No. 27) as a motion to amend his complaint, and this Court will henceforth refer to that submission as Plaintiff's complaint.[3]  Having so found, and for the sake of efficiency and expediency, as well as because the amended pleading raises no new claims or factual allegations, this Court will resolve defendants' eight pending motions as against this first amended complaint.

## II. BACKGROUND

### A.    Facts

The facts in this case are complex and span over more than three years time.  This Court will, for the sake of convenience and clarity, divide the relevant facts according to their chronological and topical significance.[4]   These facts are taken from Plaintiff's amended complaint and the exhibits identified in the exhibit list attached to that complaint, as well as from Plaintiff's opposing memoranda.  See Brandon v. O'Mara, No. 10 Civ. 5174(RJH), 2011 WL 4478492, at *1 (S.D.N.Y. Sept. 28, 2011).

---

[3]A minor procedural hurdle is the fact that, what this Court takes to be Plaintiff's amended complaint, only lists the exhibits attached to his original complaint, without actually attaching them anew. Generally, [n]o portion of the prior pleading shall be incorporated into the proposed amended pleading by reference." L.R. 15(a).  Nevertheless, because Plaintiff has included a list of exhibits to the amended pleading that is clearly meant to refer to the almost 100 pages of exhibits in his original complaint, this Court will, in resolving defendants' motions, understand his amended complaint as including those original exhibits.

[4]Exhibits attached to Plaintiff's original complaint and defendants' motions to dismiss reveal a spiteful relationship between the opposing parties, filled with recriminations, and hateful, obscenity-laden emails that attest to the heightened emotional state in which the events pertinent to this case took place. This Court will not dwell on these or discuss them in detail, finding them irrelevant to assessing Plaintiff's pleadings.

### 1.    Employment Prior to the March 20, 2008 Accident

Plaintiff was hired by Praxair, Inc. on January 11, 1999.  (Am. Comp. ¶ 38, Docket No. 27.)  Plaintiff worked as a senior engineer, whose work included overseas travel to various locations.  (Pl.'s Ex. O, ¶ 16.)[5]  In the course of a pre-employment physical Plaintiff disclosed various disabilities, and thereafter enrolled in the Short Term Disability ("STD") and Long Term Disability ("LTD") benefit plans, administered through Aetna, Inc.  (Am. Comp. ¶¶ 38-39.)  Plaintiff thereafter, in February of 2007, was diagnosed with severe bilateral spinal stenosis and approved for benefits pursuant to the STD benefit plan from February of 2007 until May 21, 2007.  (Id. ¶¶ 40, 42.)

### i.    Workplace Environment

Following his diagnosis, Plaintiff was allegedly threatened with termination on a number of occasions.  On February 16, 2007, Plaintiff's former supervisors, defendants Breitbach and Petronio, as well as Krysiak, a Praxair, Inc. employee, threatened Plaintiff with termination should he not maintain his regular workload while on disability leave.  (Id. ¶ 43.)  The same defendants threatened Plaintiff again on May 21, 2007, this time warning that Plaintiff would be terminated from his position if he took additional time off for disability-related reasons.  (Id. ¶ 49.)  Afterwards, sometime in July of 2007, Krysiak again threatened Plaintiff with termination, this time for violating Praxair, Inc.'s "People Excellence Policy."  (Id. ¶ 52.)  Throughout this period, until March of 2008, Praxair, Inc. denied Plaintiff promotions and transfers, as well as other, unspecified, benefits.  (Id. ¶ 55.)

The stress and anxiety of Plaintiff's disability and the threats of termination led him

---

[5]Citations to Plaintiff's exhibits all refer to documents attached to his original complaint.  (Docket No. 1.)

to consider getting mental health treatment.  He was warned, however, by defendant and nurse Linda Morgan that doing so was "a career ender" and would, itself, result in termination.  (Id. ¶ 47; Pl.'s Ex. O, ¶ 6.)  Plaintiff opted not to seek mental health treatment.  (Pl.'s Ex. O, ¶ 6.)

### ii.    Disability Coverage and Treatment

Contemporaneous with the problems Plaintiff was experiencing at work, he was also encountering problems dealing with Aetna, Inc., Praxair's claim administrator.  Aetna, Inc. denied receiving various pieces of unspecified medical information sent by Plaintiff.  (Am. Comp. ¶ 44.)  In response to a request for medical records, Plaintiff received, along with other documents, an "AUTHORIZATION TO SHARE AND USE MEDICAL INFORMATION," in his name, but that did not carry his original signature.  (Id. ¶ 50.)[6] Further inquiry revealed that the original had been destroyed pursuant to company policy. (Id.)  Aetna, Inc. also failed to provide a disability rating criteria, on the basis that Aetna does "not utilize specific rating criteria's [sic] in assessing disability, as our decisions are based on your disability."  (Pl.'s Ex. F.)

Despite basing its decision on Plaintiff's disability, Aetna, Inc. allegedly downgraded the severity of Plaintiff's condition.  (Am. Comp. ¶ 44.)[7]  Then, on August 20, 2007, Plaintiff was informed that as a result of a billing error, Aetna was retroactively denying benefit payments from April 8, 2007 to August 20, 2007.  (Id. ¶ 53.)

---

[6]Plaintiff attaches the letter as an exhibit.  The document includes Plaintiff's signature, but the signature is centered on the bottom fo the page, bearing no relation to the "Claimant's Signature" line.  It is also not hand-dated.  (Pl.'s Ex. E.)

[7]Although Plaintiff's amended complaint ascribes this conduct to Aetna, Inc., he also blames Praxair for "watering down" his diagnosis.  (Pl.'s Ex. O, ¶ 7.)

Praxair, Inc., through Nurse Morgan, also ordered Plaintiff to stop seeing his treating physician, a neurosurgeon, and instead commence treatment with Dr. Leonard Kaplan. (Id. ¶ 46.)  Praxair, Inc. allegedly described Dr. Kaplan, also a defendant in this action, as "Praxair's neurosurgeon," though, as Plaintiff would later discover, Kaplan was not a neurological specialist.  (Id.)

Upon Plaintiff's return to work in May of 2007, Plaintiff requested various workplace accommodations.  These included an anti-fatigue mat, a hands-free handset, an adjustable chair and stand-up workstation, and travel accommodations, which included more leg room and the ability to get up and move during flights.  (Id. ¶ 48; Pl.'s Ex. O, ¶ 12.)  These requests were denied for several months until Plaintiff put them in writing, at which point the accommodations were granted, including ones Plaintiff did not request, with the exception of his requested travel accommodations.  (Pl.'s Ex. O, ¶ 12.)

## 2.    Employment Following the March 20, 2008 Accident

On March 20, 2008, Plaintiff was returning from a business trip when he was hit by a motor vehicle.  (Id. ¶ 56.)  As a result of the motor vehicle accident ("MVA"), Plaintiff suffered various injuries, including to his head, necessitating treatment at Buffalo General Hospital.  (Pl.'s Ex. O, ¶ 17.)  Plaintiff immediately contacted Praxair, Inc. to make them aware of the situation.  (Am. Comp. ¶ 57.)

### i.    Post-MVA Disability Coverage and Treatment

Upon being discharged from the hospital with a neck brace, Plaintiff sought treatment with Kaplan on March 21, 2008.  Plaintiff informed Kaplan that he had been instructed, while at the hospital, to seek treatment from a neurosurgeon for his injuries. Kaplan told Plaintiff to "lose the neck brace" and dismissed Plaintiff without further analysis.

(Id. ¶ 58.)  Thereafter, on March 23, Plaintiff experienced worsening symptoms and went to the Kenmore Mercy Emergency Room where he was diagnosed with post-concussion syndrome.  Plaintiff later learned that Kaplan was, in fact, not a neurosurgeon, when Kaplan's receptionist corrected Plaintiff that Kaplan was actually an osteopathic physician. Plaintiff then ceased treatment with him, in favor of specialist care elsewhere.  (Am. Comp. ¶ 59; Pl.'s Ex. O, ¶ 22.)

On September 18, 2008, Plaintiff was approved for long-term disability benefits pursuant to the LTD plan.  (Am. Comp. ¶ 70.)  Less than a year later, Praxair, Inc. notified Plaintiff that he would need to apply for social security benefits, or have his LTD benefits significantly reduced.  (Id. ¶ 71.)  Plaintiff applied for, but was denied, benefits.  (Id. ¶ 72.) Subsequently, Aetna, Inc. reduced Plaintiff's benefits on June 1, 2009, and terminated his benefits on July 10, 2010.  (Id. ¶¶ 73-74.)

Plaintiff scheduled a "Return to Work" physical with defendant Dr. Gordon Steinagle for April 16, 2010.  (Pl.'s Ex. L.)[8]  Plaintiff went to his appointment on April 15, 2010, but was advised by the receptionist that the doctor could not see him that day.[9]  Apparently Steinagle then came to the front desk to speak with Plaintiff and directed him into a storage closet, where he stated that he had been directed by Praxair, Inc. not to see Plaintiff and had been ordered not to say more.  (Pl.'s Ex. O, ¶ 33.)  On Plaintiff's insistence, Steinagle handwrote a note, which said: "We were advised to have you contact your carrier (Workers Compensation/Long Term Disability) we were advised that we cannot see you today for Praxair."  (Pl.'s Ex. M.)  A letter by Praxair Inc., dated May 3, 2010, states that Plaintiff was

---

[8]Such a physical had been initially scheduled with Steinagle at an earlier date.  (Am. Comp. ¶ 60.) This meeting was delayed because Steinagle was missing parts of Plaintiff's medical record.  (Id. ¶ 61.)

[9]The discrepancy between Plaintiff's scheduled April 16, 2010 appointment and his appearance on April 15 is unexplained.

required to first consult his own physician and the physicians previously seen in connection with his workers' compensation and LTD benefits claims.  (Pl.'s Ex. N.)  Only once those doctors had approved Plaintiff to return to work, could he be seen by Steinagle for purposes of a return-to-work physical.  (Id.)

Following this incident, on June 8, 2011 Plaintiff sought treatment with defendant Dr. Melvin Brothman.  Brothman examined Plaintiff and informed him that he had a torn labrum in his right hip.  (Am. Comp. ¶ 88.)  Despite so informing Plaintiff, Brothman then issued a written report denying the right hip injury.  (Id.)

### ii.   Workers' Compensation

Following the MVA, Praxair, Inc. denied Plaintiff's workers' compensation claim. Plaintiff initiated a workers' compensation proceeding.  During this proceeding, Broadspire Services, Inc., the administrator of Praxair's Workers' Compensation Insurance, was represented by defendants Susan Duffy and Corey Loudenslager.  Praxair, Inc., affirmed that, as late as January 26, 2010, Plaintiff remained an employee with them.  (Am. Comp. ¶ 75.)  At a February 5, 2010 workers' compensation hearing, Loudenslager stated to the Administrative Law Judge in charge of the proceeding that "[i]t is our position that he [Hills] can still do that [his job]."  (Id. ¶ 76) (alterations in original).[10]  Defendants also attempted to settle the matter, in February and April of 2010, to no avail.  (Id. ¶ 77; Pl.'s Ex. O, ¶ 32.)

On February 10, 2010, the New York State Workers' Compensation Board determined that Plaintiff had a temporary partial disability.  (Pl.'s Ex. T, p. 5.)  Plaintiff was directed to participate in a vocational rehabilitation assessment to determine his ability to

---

[10]Defendants argue that Plaintiff misinterprets their statements as indicating that he could still perform his job at Praxair, Inc., when in fact they only meant that he could perform some work in the national labor market.  Mindful at which stage of the proceedings defendants' bring their motions, this Court reads the purported statement in Plaintiff's favor.

work.  (Id.)  Plaintiff does not appear to have participated in this program, and was criticized at the April 13, 2010 workers' compensation hearing by an administrative law judge.  (Id. at 6.)  Between these two events, on April 8, 2010, defendants allegedly modified the physical requirements of his former position of senior engineer, and backdated them to April 8, 2008.  (Am. Comp. ¶ 79.)[11]

Plaintiff went on to challenge the Workers' Compensation Board's determination of partial disability, which resulted in a decision by the Workers' Compensation Board, on August 25, 2010 that found Plaintiff totally disabled.  (Pl.'s Ex. T, p. 7.)  Defendants have appealed this decision, which, at his time, remains unresolved.  (Id.; Am. Comp. ¶ 86.)

### iii.    Equal Employment Opportunity Commission Charge

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on July 20, 2010.  Prior to that filing, on May 3, 2010 Praxair sent Plaintiff a termination of employment notice, as well as a notice of termination of his disability-related benefits, in which it explained that, in Praxair's view, Plaintiff was unable to return to work in the foreseeable future.  (Id. ¶ 78.)  Plaintiff had been continuously absent from his employment since the date of his accident, March 20, 2008.  (Pl.'s Ex. N.)  Praxair, Inc. invited Plaintiff to submit any objective medical information supporting his foreseeable return to work, with or without reasonable accommodation.  (Id.)  Plaintiff did not do so.

 Praxair, Inc.'s interests in the EEOC proceeding were represented by defendants Linda Joseph and Ginger Schroeder.  A "Notice of Right to Sue" letter was issued on June

---

[11]The original physical requirements of his position, contained in an email from defendant Breitbach dated February 22, 2007 state that Plaintiff would be required to occasionally lift and/or move up to 10 pounds, and travel to national and/or global Praxair, Inc. offices.  (Pl.'s Ex. G.)  By contrast, Praxair's job description for Senior Engineer I, as of April 8, 2008, required moderate lifting and carrying of 15-45 pounds, occasional climbing with use of legs and arms, as well as national and international travel.  (Pl.'s Ex. H, p. 2.)

27, 2011, stating that the EEOC had been unable to conclude that the information provided

established a violation of relevant statutes.  (Id. ¶ 94.)  Specifically, the EEOC investigator

"point[ed] out that the demand is very high, that there is no trust between the parties, and

that Respondent is very hesitant to participate in our face to face negotiation process

because of the statements you have or your representative has made in websites [sic]."

(Pl.'s Ex. R.)[12]

## B.   Procedural History

Plaintiff commenced this action on August 11, 2011 by filing a complaint in the

United States District Court for the Western District of New York.  (Docket No. 1.)  Both the

Duffy Defendants (Docket No. 13) and the Joseph Defendants (Docket No. 14) filed

motions to dismiss on September 15, 2011.  Praxair followed suit on September 30, 2011.

(Docket No. 19.)  Defendant Kaplan filed an Answer on September 28, 2011.  (Docket No.

17.)  Broadspire's motion to dismiss was filed on October 11, 2011 (Docket No. 24), and

Old Republic's motion to dismiss followed on November 2, 2011 (Docket No. 36), which

was in turn followed by Aetna's motion on November 7, 2011 (Docket No. 39).  Defendant

Kaplan then filed a motion for judgment on the pleadings on November 28, 2011.  (Docket

No. 46.)  The final motion to dismiss was filed by defendant Brothman on December 5,

2011.  (Docket No. 49.)  Plaintiff submitted various responses, to which defendants filed

replies, culminating in Plaintiff's motion for leave to file sur-reply, which was granted on

December 22, 2011.  (Docket No. 53.)  Briefing on the last of the dispositive motions finally

concluded on January 24, 2012, at which time this Court took the various motions under

---

[12]The reference to "websites" is presumably in reference to the many emails sent by Plaintiff's wife to defendants.

advisement without oral argument.

## III. DISCUSSION

**A.     Judgment on the Pleadings and Motion to Dismiss Standard**

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  The standard by which to decide a Rule 12(c) motion is the same as for a 12(b)(6) motion to dismiss.  Bank of N,Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010).  Pursuant to Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim.  Fed. R. Civ. P. 8(a)(2).  But the plain statement must "possess enough heft to show that the pleader is entitled to relief."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor.  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness.  See Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)  ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 129 S. Ct. at 1945 (quoting Twombly, 550 U.S. at 570).  Labels, conclusions, or a "formulaic recitation

of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 129 S. Ct. at 1949. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Id. at 1950; Fed. R. Civ. P. 8(a)(2).  Well-pleaded allegations must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

Courts therefore use a two-pronged approach to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits."  Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). This examination is context specific and requires that the court draw on its judicial experience and common sense.  Iqbal, 129 S. Ct. at 1950.  First, statements that are not entitled to the presumption of truth – such as conclusory allegations, labels, and legal conclusions – are identified and stripped away. See Iqbal, 129 S. Ct. at 1950. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief."  Id.

B.    **Plaintiff's 42 U.S.C. §§ 1985 and 1986 claims**

Plaintiff's central claim is that defendants engaged in a civil conspiracy to deprive him of various benefits in violation of 42 U.S.C. §§ 1985 and 1986.  "A claim under section 1986, however, lies only if there is a viable conspiracy claim under section 1985." Gagliardi v. Vill. of Pawling, 18 F.3d 188, 194 (2d Cir. 1994).  Accordingly, this Court will focus its

inquiry on whether Plaintiff has met his burden under § 1985.[13]

Plaintiff specifically brings his claims under § 1985(3).  Pursuant to that subsection, a plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) where a person is either injured in his person or property or deprived of any right of the citizens of the United States."  Adams v. Smith, No. 08:07-CV-0452 (LEK/RFT), 2007 WL 2323435, at *2 (N.D.N.Y. 2007) (quoting Fox v. City of N.Y., No. 03 Civ. 2268, 2004 WL 856299, at *9 (S.D.N.Y. Apr. 20, 2004)).  Furthermore, the conspiracy must also be motivated by some 'racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action."  Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1097-88 (2d Cir. 1993) (quoting United Brotherhood of Carpenters, Local 610 v. Scott, 463 U.S. 825, 828-29, 103 S. Ct. 3352, 77 L. Ed. 2d 1049 (1983)).  A claim under § 1985(3) will not lie where a plaintiff cannot show a causal link between the alleged discriminatory conduct and the plaintiff's membership in a protected class.  See Pabon v. N.Y.C. Transit Auth., 703 F. Supp. 2d 188, 202 (E.D.N.Y. 2010).

Defendants' various briefs argue that Plaintiff's § 1985(3) claim must be dismissed on the ground that Plaintiff has failed to demonstrate a constitutionally protected right, or

---

[13]Plaintiff also asserts claims under 42 U.S.C. §§ 1981 and 1983.  § 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship." Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 224 (2d Cir. 2004).  To establish a § 1981 claim, a plaintiff must demonstrate (1) that he is a member of a racial minority; (2) that there was an intent to discriminate on the basis of race by the defendants; and (3) that the discrimination concerned one or more of the activities enumerated in the statute.  See Brown v. City of Oneonta, N.Y., 221 F.3d 329, 339 (2d Cir. 2000).  Plaintiff has not argued that he was discriminated against based on race, and any claims falling under § 1981 are dismissed.  § 1983 provides that persons who, acting under the color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and other laws are subject to civil liability.  Plaintiff has not alleged that any of the defendants involved in this case were acting under color of state law.  Consequently any claims arising under that section are also dismissed.

that he was denied equal protection as a result of the violation of that right.  (<u>See, e.g.</u>, Joseph Defs.' Mem. 13, Docket No. 14-1; Praxair Mem. 15, Docket No. 19-1.)  Defendants further argue that Plaintiff cannot recover the benefits he seeks under § 1985(3) because other statutes already provide him with an enforcement mechanism and remedy.  (<u>See, e.g.</u>, Broadspire Mem. 10-11, Docket No. 24-3; Aetna Mem. 15-16, Docket No. 41.) Defendants construe Plaintiff's complaint as seeking recovery of benefits under the ADA, the disability plans, and New York Workers' Compensation Law, and point out that each of these already has a set of remedial rules under which he may proceed.

Plaintiff responds that he is not seeking disability benefits or workers' compensation benefits, but rather "Constitutionally protected disability and employment rights."  (Pl.'s Resp. to Praxair Mot. 9, Docket No. 29.)  As this response makes clear, the discriminatory animus alleged in his complaint is one based on disability.  Plaintiff suffered a disability first when he was diagnosed with bilateral spinal stenosis in February of 2007, and again following his MVA in March of 2008.

This Court finds that Plaintiff's § 1985(3) claim is subject to dismissal, first, for failure to meet the heightened pleading requirement of a conspiracy charge.  Plaintiffs claiming the existence of a conspiracy "must allege, with at least some degree of particularity, overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy."  <u>Thomas v. Roach</u>, 165 F.3d 137, 147 (2d Cir. 1999).  Further, "[i]n order to maintain an action under § 1985, a plaintiff must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."  <u>Webb v. Goord</u>, 340 F.3d 105, 110-11 (2d Cir. 2003) (citation and internal quotation marks omitted).  Plaintiff's complaint consistently

15

describes defendants as conspiring to defraud him of benefits, but this only amounts to the type of "conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights [that] cannot withstand a motion to dismiss." Gyadu v. Hartford Ins. Co., 197 F.3d 590, 591 (2d Cir. 1999). In fact, the only non-conclusory factual allegation in Plaintiff's complaint relating to his conspiracy claim is that various individual defendants emailed each other, and stated that "[t]his is another one that I suggest a conference call to go over so we are all on the same page." (Pl.'s Ex. I.) But the mere fact that defendants were in contact with each other concerning Plaintiff's case, when there is no question that Plaintiff was, through his wife, contacting all of them on a continuous basis, cannot support a claim of conspiracy. See Cox v. Onondaga Cnty. Sheriff's Dep't, No. 5:08-CV-387 (NAM/ATB), 2012 WL 1069053, at *10 (N.D.N.Y. Mar. 29, 2012) (holding statement by one defendant to another that he should "squash" plaintiff's complaint insufficient to establish meeting of the minds); Gertskis v. N.Y.C. Dep't of Health & Mental Hygiene, No. 07 Civ. 2235(TPG), 2008 WL 4449285, at *2 (S.D.N.Y. Sept. 28, 2008) (finding communication discussing effort to enroll plaintiff in counseling insufficient to show agreement to achieve unlawful end).

Plaintiff's § 1985(3) claim is also subject to dismissal because it is premised on a disability-based employment discrimination claim, for which the ADA already provides a remedy. In Sherlock v. Montefiore Medical Center the Second Circuit found that a complaint did not state a cause of action under § 1985(3) where it also alleged a violation of the Age Discrimination in Employment Act ("ADEA"). 84 F.3d 522, 527 (2d Cir. 1996). Analogizing from the Supreme Court's decision in Great American Federal Savings & Loan Ass'n v. Novotny, 442 U.S. 366, 99 S. Ct. 2345, 60 L. Ed. 2d 957 (1979), which held that

16

"the deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)," the Second Circuit determined that a plaintiff could also not rely on a violation of the Age Discrimination in Employment Act ("ADEA") for the basis of a § 1985(3) claim. Sherlock, 84 F.3d at 527.  District courts have extended that holding to similarly cover § 1985(3) claims based on violations of the ADA.  See, e.g., Klaper v. Cypress Hills Cemetery, 10-CV-1811 (NGG)(LB), 2012 WL 959403, at *13 (E.D.N.Y. Mar. 21, 2012) (dismissing § 1985 employment discrimination claim for being based on violations of Title VII, ADA, and ADEA); Medvey v. Oxford Health Plans, 313 F. Supp. 2d 94, 100 (D. Conn. 2004) (dismissing plaintiff's § 1985 claim "because plaintiff has alleged violations of state and federal anti-discrimination laws [including ADA] which have their own enforcement mechanisms and remedies"); Taggart v. Moody's Investors Serv., Inc., No. 06-CV-3388 (PKC), 2007 WL 2076980, at *6 (S.D.N.Y. July 17, 2007) (finding that because "Congress has established a statutory scheme for enforcement of the substantive rights protected by the ADA, those rights cannot serve as a basis for a section 1985(3) claim"); see also Graaf v. N. Shore Univ. Hosp., 1 F. Supp. 2d 318, 323 (S.D.N.Y. 1998) (well-settled that § 1985 actions cannot be "based solely upon claims of employment discrimination").

Plaintiff's civil conspiracy claim arises out of the defendants' alleged discriminatory conduct, in the course of Plaintiff's employment, and on the basis of his disability.  Plaintiff has, in fact, raised a separate claim under the ADA.  Given this, he cannot also seek relief under § 1985(3).

To the extent Plaintiff intends to rely on § 1985(3) for recovery of benefits, his claims are also precluded.  Any unpaid disability benefits owed pursuant to the STD and LTD plans are governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C.

§§ 1001, *et seq.* ("ERISA").  <u>See</u> <u>Clark v. World Cable Commc'ns, Inc.</u>, 166 F.3d 1199 (Table), 1998 WL 907904, at *2 (2d Cir. 1998) (summary order) (ERISA provides exclusive remedy for beneficiary seeking to recover plan benefits).   Recovery of workers' compensation benefits is precluded by New York's Workers' Compensation Law.  <u>See</u> Workers' Comp. § 23 (detailing procedures for contesting determination by Workers' Compensation Board); <u>see also</u> <u>O'Connor v. City of N.Y.</u>, 839 N.Y.S.2d 434 (N.Y. App. Term. 2007) ("Workers' Compensation Board has exclusive jurisdiction to hear and determine plaintiff's claim for workers' compensation benefits."); <u>see also</u> <u>Homeless Patrol v. Joseph Volpe Family</u>, No. 09 Civ. 3628(GBD)(FM), 2010 WL 2899099, at *17 (S.D.N.Y. June 29, 2010) ("Under New York law, [plaintiff's] exclusive remedy following the denial of his [workers' compensation] claim was to appeal that ruling."); <u>Agard v. N.Y. State Dep't of Taxation & Fin.</u>, No. 10-CV-4726(JS)(GRB), 2012 WL 601474, at *5 (E.D.N.Y. Feb. 23, 2012) (plaintiff's activities protected exclusively by workers' compensation law rather than Title VII); <u>c.f.</u>, <u>Calderon v. Symeon</u>, 3:06CV1130 (AHN), 2007 WL 2439445, at *4 (D. Conn. June 18, 2007) (holding that plaintiff could not avoid exclusive jurisdiction of Connecticut Workers' Compensation Act by bringing § 1985 claim).

Further, even if his claim were reinterpreted to avoid these obstacles, it is unclear what class-based animus would sustain his § 1985(3) claim.  <u>See</u> <u>Katz v. Klehammer</u>, 902 F.2d 204, 208 (2d Cir. 1990) (dismissing § 1985(3) claim for being "completely devoid of any claim of class-based animus, whether economic, political, or otherwise").   Plaintiff's attempt to re-skin his § 1985(3) claim as alleging violations of constitutional "employment rights" must fail.  Plaintiff presents no case law in support of his contention that a civil conspiracy claim can survive on the basis of such rights and a review of relevant cases

18

reveals an absence of authority supporting such a proposition.  If anything, cases hold the opposite.  Gusler v. City of Long Beach, --- F. Supp. 2d ----, 2011 WL 4628742, at *31-*32 (E.D.N.Y. Oct. 3, 2011) (rejecting § 1985(3) claim premised on plaintiff's status as union member and paid firefighter); see also Goode v. St. Jude Med., No. CIV S-08-0302 MCE EFB PS, 2009 WL 3824788, at *3 (E.D. Cal. Nov. 16, 2009) (Report and Recommendation) ("[P]laintiff's allegation that defendants conspired to deprive her of equal employment rights, does not state a claim pursuant to Section 1985(3) . . . .").  To the extent the claim can be characterized as based on Plaintiff's commercial rights it must also fail.  See Graham v. Henderson, 89 F.3d 75, 82 (2d Cir. 1996) (noting that the "Supreme Court has explicitly declined to extend § 1985(3) to reach conspiracies based on economic or commercial views, status, or activities").

Accordingly, Plaintiff's claims arising under § 1985 and 1986 will be dismissed. See Leung v. N.Y. Univ., No. 08-cv-5150 (GBD), 2010 WL 1372541, at *7-*8 (S.D.N.Y. Mar. 29, 2010) (dismissing § 1985(3) claim based on same facts and theory as underlying claim for unlawful termination and retaliation because plaintiff failed to identify separate constitutional right).[14]

## C.    Plaintiff's ADA Claim

Plaintiff's other primary claim is that he was subjected to discrimination on the basis of a disability in violation of the ADA.  At the outset, this Court notes that Plaintiff's ADA

_____

[14]A number of other defendants raise additional arguments.  The Duffy Defendants argue, for example, that Plaintiff's § 1985 claim was not raised against them in his EEOC filing, and thus he is administratively barred from pursuing this claim against them now.  See Strine v. Marion Cen. Sch. Dist., 280 F. Supp. 2d 75, 78 (W.D.N.Y. 2003) ("As a general rule, a party not named in an EEOC charge may not be named in a subsequent discrimination suit.").  The same defendants also argue that the claim must be dismissed because, as against them, it is premised solely on the workers' compensation proceeding, which resulted in a favorable determination for Plaintiff, precluding a finding of injury or deprivation of a right.  (Duffy Defs.' Mem. 6, Docket No. 13-1.)  Because this Court concludes that Plaintiff has not made out a claim under 1985 and 1986 against any defendant, it does not reach these additional arguments.

claim must be dismissed against the individual defendants, because the ADA does not provide for individual liability in the context of employment discrimination. Spigel v. Schulmann, 604 F.3d 72, 79-80 (2d Cir. 2010) (per curiam).

Defendants seek to divide Plaintiff's ADA claim into two halves, corresponding to the period prior to his MVA, when he was suffering from severe bilateral spinal stenosis, and to the period following his accident on March 20, 2008, when he again suffered injury. (Praxair Mem. 16.)  Defendants argue that acts arising out of the first period are time-barred for failure to file a charge with the EEOC within 300 days after the last alleged discriminatory conduct. (Id. at 17-20.)  Defendants next argue that ADA claims from the post-MVA period must be dismissed because the only accommodation Plaintiff requested was the continuation of unpaid leave for an indefinite period, which does not constitute a reasonable accommodation. (Id. at 20-24.)

Plaintiff responds by arguing that the holistic nature of defendants' discriminatory conduct creates an unbroken line of abuse that cannot be subdivided into distinct components, and describes his claim as one alleging a hostile work environment. Alternatively, he argues that the time period for filing an EEOC charge should have been tolled because of Plaintiff's medical incapacitation.  He further argues that he asked for accommodations in obtaining professional re-certifications (which had expired due to his disability) and that he attempted to contact Praxair, Inc. on numerous occasions to resolve his disability status.

In resolving this claim, this Court must first consider whether there has been a continuing violation such that the events prior to, and post, the MVA fall under Plaintiff's July 20, 2010 EEOC filing, or whether those incidents are time-barred.  If they are, this

20

Court will still need to consider whether the filing deadline should be tolled because of Plaintiff's injuries.  Only then will this Court be able to consider whether any of the surviving allegations sufficiently plead a violation of the ADA.

### 1.      Timeliness of Plaintiff's ADA Claim

In raising a claim under the ADA, a charge of discrimination must first be filed with the EEOC within 300 days of the alleged discrimination.  42 U.S.C. § 12117(a); Valtchev v. City of N.Y., 400 F. App'x 585, 588 (2d Cir. 2010) (summary order); Harris v. City of N.Y., 186 F.3d 243, 247 n. 2 (2d Cir. 1999).  However, "[t]he 'continuing violation' doctrine holds that an act that occurs within 300 days of an EEOC charge may implicate–and therefore make timely–incidents otherwise outside the mandatory filing deadlines."  Miller v. N.Y.C. Health & Hosp. Corp.. No. 00 Civ. 140, 2004 WL 1907310, at *3 (S.D.N.Y. Aug. 25, 2004) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114-21, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)).  "[A] continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice."  Cornwell v. Robinson, 23 F.3d 694, 706 (2d Cir. 1994).  However, such a finding should only be made on compelling circumstances, as the continuing violation doctrine is disfavored in this circuit.  See Blesedell v. Mobil Oil Co., 708 F. Supp. 1408, 1415 (S.D.N.Y. 1989) (citing LaBeach v. Nestle Co., 658 F. Supp. 676, 687 (S.D.N.Y. 1987)); see also Samimy v. Cornell Univ., 961 F. Supp. 489, 493 (W.D.N.Y. 1997) (citing cases).

Plaintiff argues that defendants engaged in a "pattern, policy and practice of discrimination and wrong-doing" constituting "a holistic series of incapacitating events that

further perpetuated the already existing pattern of continuing violations." (Pl.'s Resp. to

Praxair Mot. 3-4.)[15]   However, this allegation is conclusory.  The mere act of alleging a

"policy" or "practice" in a complaint does not convert a series of discrete acts, related

though they may be, into a single unlawful practice.  Morgan, 536 U.S. at 111.  Plaintiff's

complaint is devoid of "specific discriminatory policies or mechanisms such as

discriminatory seniority lists, or discriminatory employment tests" that would be sufficient

to trigger the continuing violation policy.  Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d

Cir. 1993) (citations omitted), *abrogated on other grounds by* Kasten v. Saint-Gobain

Performance Corp., --- U.S. ----, 131 S. Ct. 1325, 179 L. Ed. 2d 379 (2011).  As already

discussed relative to Plaintiff's § 1985(3) claim, the only part of the complaint that asserts

or refers to any such a policy is an email in which Keith Wesley, a Broadspire Claim

Specialist, writes, in reference to Plaintiff, that "[t]his is another one that I suggest a

conference call to go over so we are all on the same page."  (Am. Comp. ¶ 65.)  Even if

this sentence, considered by itself, could be considered indicative of an improper motive,

---

[15]In his response to Praxair's motion, Plaintiff, for the first time, asserts that defendants conduct created a "hostile work environment."  (Pl.'s Resp to Praxair's Mot. 4.)  "[T]imeliness of a claim under the ADA differs dramatically depending on whether a plaintiff alleges discrimination or a hostile work environment."  Giannattasia v. City of N.Y., No. 09-CV-0062 (ENV)(MDG), 2011 WL 4629016, at *3 (E.D.N.Y. Sept. 30, 2011) (citing Morgan, 536 U.S. 101).  To prove a hostile work environment claim, a plaintiff must prove "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [plaintiff's] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer."  Mack v. Otis Elevator Co., 326 F.3d 116, 122 (2d Cir. 2003) (citations omitted).  Aside from the fact that, although Plaintiff's EEOC charge mentions such a claim, his own complaint does not, the alleged facts are not of the type that "cannot be said to occur on any particular day" or "may not be actionable on [their] own."  Morgan, 536 U.S. at 115.  Additionally, to the extent a claim for a hostile work environment also requires a showing of an official policy or mechanism of discrimination, Plaintiff has also failed to meet this burden.  See Predun v. Shoreham-Wading River Sch. Dist., 489 F. Supp. 2d 223, 228 (E.D.N.Y. 2007) (finding that continuing violation doctrine applicable in cases alleging "a hostile work environment where continuing acts of discrimination are part of an official policy or mechanism of discrimination").  Finally, Plaintiff's hostile work environment claim would be time-barred, because incidents occurring after the MVA, when Plaintiff was on medical leave, cannot be counted as part of his hostile work environment claim.  See Hogan v. J.P. Morgan Chase Bank, 402 F. App'x 590, 592 (2d Cir. 2010) (summary order) (holding plaintiff's hostile work environment claim time-barred where acts occurred prior to plaintiff's going on medical leave, and thus fell outside 300-day EEOC filing deadline).

a review of the email in its entirety shows that Mr. Wesley was merely referring to Plaintiff's case as one that had been ongoing for several years, and involved a number of complications.  (Pl.'s Ex. I.)  These included that defendants were not permitted by Plaintiff's wife to speak with him directly, and that she was acting in a hostile and aggressive manner.  (Id.)  This reflects that, far from evidencing a policy by which all the defendants were conspiring against a class of disabled employees, defendants were only communicating about how to resolve Plaintiff's case.  Even viewed in the light most favorable to Plaintiff, this one sentence, taken out of context, cannot support his assertion that defendants were conspiring or otherwise acting pursuant to a policy denying benefits to disabled Praxair employees.

Nowhere else does his complaint show that discrimination was defendants' standard operating procedure.  Emps. Committed for Justice v. Eastman Kodak Co., 407 F. Supp. 2d 423, 427-28 (W.D.N.Y. 2005) (quoting International Brotherhood of Teamsters v. United States, 431 U.S. 324, 336, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977)).  Plaintiff is thus left with a series of "discrete acts," which are generally insufficient to constitute a continuing violation.  See Morgan, 536 U.S. at 114.  In Morgan, the Court identified termination, failure to promote, denial of transfer, and refusal to hire as all constituting separate actionable unlawful employment practices.  See id.  Plaintiff's complaint includes a number of these, alleging that, pre-MVA, defendants refused to provide travel accommodations, forged documents, threatened him with termination, "retroactively denied payments," and blocked promotions and transfers.  (Am. Comp. ¶¶ 43, 45, 47, 48, 49, 50, 52, 53, 55.)  The fact that these incidents occurred not once, but several times, is not enough to trigger application of the continuing violation doctrine.  See Lightfoot v. Union Carbide Corp., 110 F.3d 898,

907 (2d. Cir. 1997) (repeated demotions and denial of pay increases not sufficient for continuing violation theory).  "[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." Lambert, 10 F.3d at 53.  To establish the kind of pattern or practice Plaintiff is alleging, he would instead need to present multiple incidents of discrimination against individuals in a particular protected class and show that these were the result of some policy or mechanism.  See, e.g., Robins v. Metro-North Commuter R.R. Co., 267 F.3d 147, 153 (2d Cir. 2001), *cert. denied*, 535 U.S. 951, 122 S. Ct. 1349, 152 L. Ed. 2d 251 (2002); Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001), *cert. denied*, 536 U.S. 922, 122 S. Ct. 2586, 153 L. Ed. 2d 776 (2002).  This he has not done.  Accordingly, Plaintiff's ADA claims outside the 300-day filling deadline will be time-barred unless some grounds exist to toll the EEOC's filing deadline.  See Morgan, 536 U.S. at 113 (discrete acts not actionable if time-barred, even when related to acts alleged in timely filed charges).[16]

## 2.    Tolling of the Statute of Limitations

Plaintiff argues that he suffered multiple injuries, including "Post Concussion Syndrome" as a result of his accident, and that, as a result, Plaintiff was incapacitated and reliant on a continuous intake of high potency narcotic pain killers such that he could not file a timely EEOC claim.  (Pl.'s Resp. to Praxair Mem. 2.)

"When determining whether equitable tolling is applicable, a district court must

---

[16]Plaintiff further argues that his pre-MVA disability and defendants' treatment runs into the post-MVA period on the basis that the accident merely compounded a previous injury and provided defendants with the opportunity to perpetuate their discriminatory conduct.  (Pl.'s Resp. to Praxair Mot. 3.)  However, "the fact that the plaintiff's ongoing protests, objections, [and] requests for reconsideration . . . have caused the dispute to linger to the present day" is not sufficient to trigger the continuing violation doctrine. Whalen v. CSC TKR, LLC, No. 11 CV 1834(VB), 2011 WL 6965740, at *4 (S.D.N.Y. Dec. 28, 2011) (quoting Yip v. Bd. of Trs. of State Univ. of N.Y., No. 03-CV-00959C(SR), 2004 WL 2202594, at *4 (W.D.N.Y. Sept. 29, 2004)).

consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." Zerilli-Edelglass v. N.Y.C. Transit Auth., 333 F.3d 74, 80-81 (2d Cir. 2003) (citation and quotation marks omitted).  A medical condition or mental illness can meet this standard. First, however, a plaintiff has to offer a "particularized description of how h[is] condition adversely affected h[is] capacity to function generally or in relationship to the pursuit of h[is] rights."  Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000).

Here, Plaintiff has merely alleged that Plaintiff was on highly potent pain medications, had several surgeries, and suffered from post concussion syndrome.  No further details are provided on how this treatment, within the 300-day deadline running from each of Plaintiff's many alleged violations, prevented Plaintiff from filing a charge with the EEOC.  This is insufficient to satisfy the standard necessary for triggering the equitable tolling doctrine.  See Perez v. Ahlstrom Corp., No. 10-cv-1299, 2011 WL 2533801, at *3 (D. Conn. June 27, 2011) (holding *pro se* plaintiff's allegations that he suffered from lingering psychological distress preventing full mental recovery insufficient for equitable tolling); Mulkern v. N.Y. State Police, No. 08 Civ. 8870, 2010 WL 5584598, at *11 (S.D.N.Y. Dec. 8, 2010) (noting that although plaintiff suffered from post-traumatic stress syndrome, depression, anxiety, and alcoholism, "such mental disabilities alone do not suffice to establish his entitlement to equitable tolling, and there is no evidence that these disabilities resulted in an overall inability to function in society or rendered [plaintiff] unable to understand or protect his legal rights").  Further, this Court notes that Plaintiff, immediately following his accident on March 20, 2008, which allegedly began the deadline's equitable

tolling, appears to have established contact with Praxair, Inc. concerning a workers' compensation claim and even engaged in settlement discussions less than a month later. (Am. Comp. ¶¶ 57, 67.)  This serves to undermine Plaintiff's claim that he was unable to protect his claims through an EEOC filing, because he has conceded to still having the ability to pursue other legal remedies.  See da Costa v. Union Local 306, No. 08 Civ. 2470, 2009 WL 3076077, at *4 (S.D.N.Y. Sept. 25, 2009) (treatment for paranoid schizophrenia and homelessness insufficient to equitably toll statute of limitations where plaintiff was nevertheless able to assemble and submit extensive papers and pursue legal rights); Tsia v. Rockefeller Univ., No. 00 Civ. 329, 2002 WL 237843, at *5 (S.D.N.Y. Feb. 15, 2002) ("[Federal] courts have repeatedly refused to apply equitable tolling where a plaintiff has evidenced an ability to pursue his or her legal rights during the relevant period.").  Other courts have similarly found equitable tolling inappropriate where plaintiffs retained the ability to pursue claims through workers' compensation proceedings.  See Mulkern, 2010 WL 5584598, at *5-*6 (considering plaintiff's ability to attend hearings in connection with workers' compensation claims as evidence of ability to pursue legal rights); Pauling v. Sec'y of the Dep't of Interior, 960 F. Supp. 793, 804 n. 6 (S.D.N.Y. 1997), vacated on other grounds, 160 F.3d 133 (2d Cir. 1998) (no equitable tolling where plaintiff was able to pursue workers' compensation during relevant period).

Accordingly, Plaintiff has neither shown a continuing violation, nor grounds for equitably tolling the EEOC deadline.  Plaintiff's discrimination charge was not filed until July 20, 2010, and hence acts prior to 300 days before this date are time-barred.

### 3.   Surviving Factual Allegations

The ADA provides that "no covered entity shall discriminate against a qualified

individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."   42 U.S.C. § 12112(a).   A plaintiff asserting a violation of the ADA must show that "(a) his employer is subject to the ADA; (b) he suffered from, or was regarded as suffering from, a disability within the meaning of the ADA; (c) he could perform the essential functions of his job with or without reasonable accommodation; and (d) he suffered an adverse employment action because of his actual or perceived disability."   Capobianco v. City of N.Y., 422 F.3d 47, 56 (2d Cir. 2005). Instead of suffering an adverse employment action, a plaintiff may also argue that his employer refused to make a reasonable accommodation.  DeRosa v. Nat'l Envelope Corp., 595 F.3d 99, 102 (2d Cir. 2010).

Here, defendants contend that Plaintiff could no longer perform the essential functions of his job, even with a reasonable accommodation.  "In the employment context, we have held that 'the ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated.'"  Hartnett v. Fielding Graduate Inst., 198 F. App'x 89, 94 (2d Cir. 2006) (summary order) (quoting Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 218 (2d Cir. 2001)).  Defendants allege that Plaintiff failed to participate in such a process, was so disabled as to be incapable of performing the work associated with his position, and failed to request a reasonable accommodation.  Plaintiff counters that defendants had previously asserted, during the workers' compensation proceeding, that Plaintiff was able to perform the necessary work, and that defendants had pledged to keep his position secure for his eventual return.

27

Relevant to this argument, on March 2, 2010, Plaintiff requested clarification of statements made by defendants at the February 5, 2010 workers' compensation hearing to the effect that Plaintiff was still able to do his job.  (Am. Comp. ¶¶ 76, 78.)  Praxair communicated that it would respond to those statements, and, on May 3, 2010, sent a letter to Plaintiff that it did not believe he could perform the essential functions of his job with or without reasonable accommodation, specifically citing his ability to travel.  That letter invited Plaintiff to provide information by May 15, 2010 concerning his ability to return to work, and whatever reasonable accommodations he would require.  (Pl.'s Ex. N.)  Plaintiff instead responded, by way of his wife: "You demanded response by today.  As you wish."  (Pl.'s Ex. T, p. 9.)  Such a response evidences Plaintiff's failure to request an accommodation and could result in dismissal of his ADA claim.  See Wega v. Ctr. for Disability Rights Inc., 395 F. App'x 782, 785 (2d Cir. 2010) (summary order) (denying plaintiff's failure to accommodate claim where no evidence sufficient to show that plaintiff requested or was denied accommodation).

Further, Plaintiff's assertion that Praxair would keep his job open and secure for his return can be rejected out of hand.[17]  An employer is not "required to grant [an employee] an indefinite leave of absence."  Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 6 (2d Cir. 1999).

Plaintiff's responding memorandum makes clear that other accommodations were also requested, but these were either granted or were not reasonable.  On March 30, 2010, Plaintiff requested an accommodation for assistance with obtaining professional re-

---

[17]In his EEOC charge, Plaintiff states that "Praxair promised that my job would permanently remain intact and secure, 'no matter what', and 'no matter how long' it took for me to return to work, and regardless of whether or not ADA accommodations would or would not be necessary."  (Pl.'s Ex. O, ¶ 23.)

certification.  But, as Plaintiff's wife writes in her "Rebuttal to Praxair Position Statement via Schroder & Joseph dated October 12, 2010," Praxair, Inc. was aware of the need for re-certification "and paid for" these re-certifications up until January 13, 2010.  (Pl.'s Ex. U, p. 42.)  Only at that point did Praxair stop responding, and there is no indication that these re-certifications would have permitted Plaintiff to return to work, when the previous ones had not.

Plaintiff also requested transfer to another position sometime in 2007 or 2008.  (Am. Comp. ¶ 55.)  Plaintiff applied for a different position outside his original department on April 21, 2010.  (Ex. T, p. 8.)  It is unclear whether transfer to that position would have constituted a reasonable accommodation.  See Bates v. Long Island R. Co., 997 F.2d 1028, 1035 (2d Cir. 1993) (noting that "reasonable accommodation generally does not require an employer to reassign a disabled employee to a different position").  Nevertheless, "a transfer to a different position may constitute a reasonable accommodation," Douglas v. Long Island Jewish Med. Ctr., No. 08-CV-1370 (SJF)(WDW), 2010 WL 3187929, at *9 (E.D.N.Y. July 29, 2010) (citing 42 U.S.C. § 12111(9)), if a plaintiff can "establish[] the existence of an appropriate vacancy," Jackan v. N.Y. State Dep't of Labor, 205 F.3d 562, 568 (2d Cir. 2000).

Defendants assert, however, that the only accommodation Plaintiff can be understood to have requested was one for a period of continued indefinite leave, having, by the time of his termination, already been on two years of disability leave.  Although Plaintiff's other requests for accommodation evidence Plaintiff's intent to return to work, as does his effort to schedule a return-to-work appointment through Dr. Steinagle, if Plaintiff was, as his memoranda demonstrate, "[t]otal temporarily disabled" then it may be the case

that there was no reasonable accommodation that Praxair could have provided Plaintiff, and his termination was proper.

As the Second Circuit has held, "[t]he duty to make reasonable accommodations does not, of course, require an employer to hold an injured employee's position open indefinitely while the employee attempts to recover, nor does it force an employer to investigate every aspect of an employee's condition before terminating him based on his inability to work." Parker v. Columbia Pictures Indus., 204 F.3d 326, 338 (2d Cir. 2000).

Nevertheless, viewing the allegations contained in the complaint in the light most favorable to Plaintiff, this Court cannot conclude that his failure to accommodate claim should be dismissed. Accepting Plaintiff's allegations as true, Plaintiff requested an accommodation to which Praxair failed to adequately respond. See Tully-Boone v. N. Shore-Long Island Jewish Hosp. Sys., 588 F. Supp. 2d 419, 425 (E.D.N.Y. 2008) (finding it inappropriate to decide reasonableness of plaintiff's accommodation request on motion to dismiss). Plaintiff was actively seeking an appointment for a return-to-work physical, at which, presumably, any necessary accommodation findings could have been made. The fact that Plaintiff failed to follow the proper procedure in making this appointment, resulting in the doctor's subsequent refusal to see him, does not mitigate Plaintiff's intent to establish conditions allowing him to return to work. Praxair's decision to then threaten termination less than a month later, and by providing Plaintiff less than two weeks to present new medical evidence of his ability to work, may have effectively stopped Plaintiff from perfecting his accommodation request. See Parker, 204 F.3d at 338 (finding employer responsible for investigating accommodation request made two weeks prior to employee's termination).

As a result, it is unclear, at this early stage of the litigation, whether Plaintiff would have been able to return to work.  This Court is dubious of Plaintiff's ability to ultimately demonstrate that he was capable of performing the work required of him through a reasonable accommodation, given his two-year disability leave, as well as Plaintiff's various descriptions of his status as totally and partially disabled.   It is similarly skeptical of Plaintiff's ability to show that there existed another position to which transfer would have constituted a reasonable accommodation.  But this Court is equally conscious of the fact that a "plaintiff need not plead 'specific facts establishing a prima facie case of discrimination' in violation of the ADA to survive a motion to dismiss."  See Negron v. City of N.Y., No. 10 CV 2757(RRM)(LB), 2011 WL 4737068, at *9 (E.D.N.Y. Sept. 14, 2011) (quoting Starr v. Time Warner, Inc., No. 07 Civ. 5871(DC), 2007 WL 4144627, at *4 (S.D.N.Y. Nov. 21, 2007)).  Based on these facts as alleged, and as deciphered from the many attached exhibits, it appears that the interactive process between Plaintiff and Praxair in the post-MVA period broke down.  This was partially because of Praxair's alleged failure to respond to Plaintiff's requests for accommodations and clarification, and partially because of Plaintiff's failure to respond to Praxair's letter in more than a perfunctory fashion.  Although the mere fact that an employer failed to engage sufficiently in the interactive process will not form a basis for an ADA claim, McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 101 (2d Cir. 2009), the breakdown here prevents this Court, at the motion to dismiss stage, from concluding that Plaintiff has not plead a claim of discrimination.  This Court does not know, but must infer in Plaintiff's favor, whether the position he applied for constituted a transfer, or was an application for new employment.  This Court also does not know whether Plaintiff would have been able to return to work in

31

the near future, and was only requesting a temporary extension of leave of a definite duration.  See Graves v. Finch Pruyn & Co., 457 F.3d 181, 185-86 (2d Cir. 2006) (vacating district court's decision on ground that court misidentified plaintiff's leave request as "indefinite" where plaintiff requested more time to get doctor's appointment); see also Parker, 204 F.3d at 338 (vacating grant of summary judgment where "record suggests that the company did nothing following [plaintiff's] request to ascertain his ability to work").

Although Praxair may at a later time move for summary judgment "based upon insufficient assurance of [Plaintiff's] successful return to work," Graves, 457 F.3d at 185-86, dismissal of that part of Plaintiff's ADA claim falling within the EEOC's 300-day filing deadline, will not be dismissed.  Only should, on a future motion or at trial, it become evident that Plaintiff could not have returned to work with or without a reasonable accommodation, and was, de facto, requesting an indefinite leave of absence, will dismissal be warranted.  See Aka v. Jacob K. Javits Convention Ctr. of N.Y., No. 09 Civ. 8195(FM), 2011 WL 4549610, at *16 (S.D.N.Y. Sept. 30, 2011) ("[C]ourts have thus far often concluded, as a matter of law, that a request for leave is unreasonable when it exceeds one year, although it does not appear that any exact number is the red line that demarcates the reasonable from the unreasonable." (quotation marks omitted)).[18]  The remaining parts of Plaintiff's ADA claim are dismissed as untimely.

---

[18]This Court is aware that Plaintiff had been on disability leave for two years following the MVA. "As a matter of law, a two-year leave is too long an absence from work to be reasonable." Starr, 2007 WL 4144627, at *4.  However, defendants do not, and this Court will not presume them to, argue that Praxair, Inc. could have terminated Plaintiff's employment at any time.  Unlike in Aka, there is no indication that Praxair had a specific date in mind by which Plaintiff was to return to work.  2011 WL 4549610, at *16.  It is also unclear whether Plaintiff might have been requesting a period of unpaid leave in order to finalize his return to work.  See Verrocchio v. Federal Exp. Corp., No. 3:09-cv-1376, 2011 WL 831430, at *3 (N.D.N.Y. Mar. 3, 2011) (noting that Second Circuit has not addressed whether finite, unpaid leave of absence request is a reasonable accommodation).

**D.     Plaintiff's Unjust Enrichment, Breach of Implied Covenant of Good Faith and Fair Dealing, Breach of Contract, Unfair and Deceptive Trade Practices Claims**

Plaintiff raises numerous claims for purposes of recovering full payment of STD and LTD benefits. Plaintiff variously alleges that his disability benefits were retroactively denied in August of 2007, after being previously approved, then wrongly reduced in 2009, and finally discontinued entirely on July 10, 2010. This, despite the fact that he applied for social security benefits as directed by Praxair. Defendants argue that all these claims are preempted by ERISA and can, in any case, be brought only against the plan administrator.

ERISA contains a broad preemption provision, providing that the statute "shall supersede any and all State laws insofar as they may now or hereafter relate to any [covered] employee benefit plan." 29 U.S.C. § 1144(a). "Any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." Aetna Health Inc. v. Davila, 542 U.S. 200, 209, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004).

Plaintiff does not seriously contend that the plans at issue do not fall under ERISA. See Gibbs v. CIGNA Corp., 440 F.3d 571, 576 (2d Cir. 2006) ("Long-term disability plans fall within ERISA's definition of an employee welfare benefit plan." (quotation marks omitted)). Similarly, Plaintiff does not argue that his claims would not, ordinarily, be preempted by ERISA, given that he is seeking to recover plan benefits, and is alleging wrongdoing in defendants' management of the plan. See Stevenson v. Bank of N.Y. Co., 609 F.3d 56, 59 (2d Cir. 2010) ("[S]tate laws affecting the determination of eligibility for benefits, amounts of benefits, or means of securing unpaid benefits- have typically been found to be preempted." (quoting Gerosa v. Savasta & Co., 329 F.3d 317, 324 (2d Cir.

33

2003)).  Claims like those raised by Plaintiff have been found preempted in numerous cases.  See, e.g., Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 47, 107 S. Ct. 1549, 95 L. Ed. 2d 39 (1987) (breach of contract); Gianetti v. Blue Cross & Blue Shield of Conn., Inc., No. 3:07cv01561 (PCD), 2008 WL 1994895, at *6 (D. Conn. May 6, 2008) (unfair and deceptive practices); Burrell v. AT&T Corp., No. 03 Civ. 2490(SAS), 2005 WL 2656124, at *5 (S.D.N.Y. 2005) (unjust enrichment);  Thompson v. Gen. Elec. Co., No. 01 Civ. 4438(JGK), 2002 WL 482862, at *6 (S.D.N.Y. Mar. 29, 2002) (breach of implied covenant of good faith and fair dealing).

But while finding that Plaintiff's state law claims, as they relate to the benefits plan, are properly preempted, this does not necessarily mean they should be dismissed.  As a general matter, a plaintiff may amend his complaint to avoid preemption under ERISA. See Schultz v. Tribune ND, Inc., No. 10-CV-2652, 2011 WL 4344168, at *6 n. 5 (E.D.N.Y. Sept. 14, 2011) (listing cases).  However, federal courts are divided as to whether state law claims should be recharacterized under a relevant ERISA provision or dismissed without prejudice.  See Kriwox v. EBS-RMSCO, Inc., No. 7:10-CV-1070, 2011 WL 2133624, at *2 (N.D.N.Y. May 26, 2011); Arthurs v. Metro. Life Ins. Co., 760 F. Supp. 1095, 1098 (S.D.N.Y. 1991) (preempted state law breach of contract claim properly treated as arising under ERISA).

Here, Plaintiff's complaint has essentially alleged that Plaintiff was a beneficiary of a disability benefits plan, that claims were submitted under that plan, and that they were later wrongfully reduced, and ultimately terminated.  This is sufficient to set forth a cause of action under ERISA.  ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." Metro. Life Ins. Co. v. Glenn, 554

34

U.S. 105, 108, 128 S. Ct. 2343, 171 L. Ed 2d 299 (2008) (citing 29 U.S.C. § 1132(a)(1)(B)). In particular, ERISA § 502(a)(1)(B) permits a participant or beneficiary of an employee benefit plan to commence a civil lawsuit "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  Considering the facts alleged, this Court concludes that recharacterizing Plaintiff's state law claims as arising under ERISA "promotes the interests of justice and sound judicial administration."  Kriwox, 2011 WL 2133624, at *2 (citing G.R.J.H., Inc. v. Oxford Health Plans, Inc., No. 07-CV-00068, 2009 WL 1362985, at *5 (N.D.N.Y. May 14, 2009)).  It is further "consistent with the Second Circuit's holding that a pleading is sufficient where it sets forth the factual allegations supporting the elements of a claim, even if it fails to identify the specific laws under which it brings a claim."  Harrison v. Metro Life Ins. Co., 417 F. Supp. 2d 424, 431 (S.D.N.Y. 2006) (citing Marbury Mgmt., Inc. v. Kohn, 629 F.2d 705, 712 n. 4 (2d Cir. 1980)).

Anticipating this possibility, Aetna argues that such a cause of action would necessarily fail because Plaintiff has nowhere alleged that he exhausted his administrative remedies under the plan.  "[F]ederal courts–including [the Second] Circuit–have recognized a 'firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases.'"  Paese v. Hartford Life & Accident Ins. Co., 449 F.3d 435, 443 (2d Cir. 2006) (quoting Kennedy v. Empire Blue Cross & Blue Shield, 989 F.2d 588, 594 (2d Cir. 1993)).  Plaintiff counters by arguing that ERISA should not apply in this context because defendants blurred the roles of administrators and sponsors.  In his sur-reply, Plaintiff also alleges that exhaustion of his administrative remedies would be futile and that he did

engage in a "vigorous, well preserved and timely pursuit" of his benefit claims." (Pl.'s Sur-Reply 3, Docket No. 55.)[19]   Futility may excuse a plaintiff from ERISA's administrative exhaustion requirement.  See Kennedy, 989 F.2d at 594.  Additionally, this Court further notes that "[d]efendants who give inadequate notice of the right to administratively appeal a denial of benefits are [] precluded from . . . asserting failure to exhaust administrative remedies as a defense," Veltri v. Bldg. Serv. 32B-J Pension Fund, 393 F.3d 318, 324 (2d Cir. 2004).   The facts alleged here describe a cantankerous relationship in which defendants are claimed to have ignored or inadequately responded to countless of Plaintiff's requests.  At the motion to dismiss stage, this Court is unwilling to presume that Plaintiff could not successfully amend his complaint to plead a cause of action under ERISA.  See State Island Chiropractic Assocs., PLLC v. Aetna, Inc., No. 09-CV-2276 (CBA)(VP), 2012 WL 832252, at *7 (E.D.N.Y. Mar. 12, 2012) (denying dismissal where complaint alleged that defendants denied requests for instructions on how to initiate internal and external appeals).

Accordingly, because "the substance of plaintiff's pleading sufficiently raises an ERISA claim, the Court will afford plaintiff an opportunity to file an amended pleading to allege claims under ERISA's specific civil enforcement provisions." G.R.J.H., Inc., 2009 WL 1362985, at *5 (citing Erickson v. Mont. Elecs. Co., No. CV 08-15-M-DWM-JCL, 2008 WL 2079146, at *6 (D. Mont. May 14, 2008).  Leave is granted to "replead the claims as arising under the civil enforcement provisions of ERISA." Id. at *6; see also Kriwox, 2011 WL 2133624, at *3 (granting cross-motion to amend where proposed second amended complaint was based on same set of facts as first amended complaint); Berry v. MVP

---

[19]While the futility argument does not appear to have been raised in Plaintiff's initial response, Aetna referred to it in its reply memorandum, and this Court granted Plaintiff leave to file sur-reply.

Health Plan, Inc., No. 1:06-CV-120 (NAM/RFT), 2006 WL 4401478, at *9 (N.D.N.Y. Sept. 30, 2006) (permitting plaintiffs to replead claims despite plaintiffs not asserting that state law claims would be sufficient to state claims under ERISA § 502).

Along those lines, this Court observes that "ERISA imposes duties only upon plan administrators and other 'fiduciaries.'" Mullins v. Pfizer, Inc., 23 F.3d 663, 666 (2d Cir. 1994); see also Burrowes v. Brookdale Hosp. & Med. Ctr., 66 F. App'x 229, 232 (2d Cir. 2003) (summary order).  Pursuant to 29 U.S.C. § 1002(21)(A):

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

"In a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable." Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 509 (2d Cir. 2002) (quoting Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1199 (2d Cir. 1989)).  Plan administrators are those persons "specifically so designated by the terms of the instrument under which the plan is operated," or "if an administrator is not so designated, the plan sponsor."  29 U.S.C. § 1002(16).

Plaintiff's complaint and responding memoranda allege that Praxair, Inc. had control over how benefits were paid out.  (Am. Comp. ¶¶ 54, 73.)  However, when "the Second Circuit addressed whether an employer could be liable in an ERISA suit for the recovery

of benefits where the employer, while not named as the 'administrator' by the plan, had 'control, indirectly, over the administration of the plan'" the court determined that ERISA "precludes employer liability, as a *de facto* co-administrator, in a suit brought under [§ 1132(a)(1)(B)], where the employer has designated a plan administrator in accordance with 29 U.S.C. § 1002(16)(1)."  State Island Chiropractice Assocs., PLLC, 2012 WL 832252, at *5 (quoting Crocco v. Xerox Corp., 137 F.3d 105, 107 (2d Cir. 1998)).

Here, Aetna appears to have been the administrator of Praxair, Inc.'s disability insurance plan.[20]  Those of Plaintiff's claims against other individual defendants that fall under ERISA will therefore be dismissed.  See Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1199 (2d Cir. 1989) ("[O]nly the plan and the administrators and trustees of the plan in the capacity as such may be held liable.").  Further, while Plaintiff will be permitted to plead claims under ERISA, Plaintiff is reminded that any "request for monetary damages, both compensatory and punitive, must be denied as a matter of law because such extracontractual relief is not available in a suit under ERISA."  Dzidzovic v. Bldg. Serv. 32B-J Health Fund, No. 02 CV 6140(TPG), 2006 WL 2266501, at *12 (S.D.N.Y. Aug. 7, 2006).

---

[20]There appears to be some confusion over who, pursuant to ERISA, is the plan administrator, and hence the proper defendant.  Aetna, Inc., while arguing that Williams and Bertolini, the former and current chief executive officers of Aetna, Inc., are not proper defendants, does not argue that it too, is not a proper defendant.  Praxair, meanwhile, argues that Plaintiff's exclusive remedy under ERISA is against Aetna, Inc., the plan administrator.  But this conflicts with an early letter from Aetna, Inc., dated June 5, 2007, which states that "Aetna acts merely as the claim administrator" and adds that "Aetna does not insure that plan, nor is Aetna the Plan Administrator for that plan" before going on to state that Aetna is not responsible under ERISA for supplying plan documents to plan participants.  (Pl.'s Ex. F.)  The letter goes on to direct Plaintiff to contact Praxair, Inc.  (Id.)  Given this confusion, although this Court presumes Aetna is, in fact, the plan administrator, Plaintiff is in no way precluded from bringing his ERISA claims against whoever is the actual administrator, or a trustee of the plan, should it prove to be an entity other than Aetna, Inc.  Similarly, Aetna, Inc. is not precluded from arguing that it is not the plan administrator.

**E..    Plaintiff's remaining claims**

Having concluded that Plaintiff's civil conspiracy claim is subject to dismissal, that his ADA claim may partly proceed against Praxair, and that his state law claims, properly recharacterized and replead as falling under ERISA, may proceed against the plan, its administrator, and any trustees, this Court is left with a number of allegations against a disparate collection of defendants.  This Court will consider these claims below.

**1.     HIPAA claim**

Plaintiff asserts a cause of action for violations of HIPAA and fraudulent seeking, sharing, and dissemination of protected and private records.  Enforcement of the HIPAA statute is limited to the Secretary of Health and Human Services.  See Nat'l Abortion Fed'n v. Aschcroft, No. 03 Civ. 8695, 2004 WL 555701, at *2 (S.D.N.Y. Mar. 19, 2004).  HIPAA does not provide a private right of action.  Bayne v. Health Ins. Portability & Accountability Act, No. 11-CV0321, 2012 WL 119617, at *6 (E.D.N.Y. Jan. 17, 2012); Ames v. Group Health Inc., 553 F. Supp. 2d 187, 192 (E.D.N.Y. 2008) (finding that case law is "clear that plaintiffs cannot bring a HIPAA enforcement action due to improper disclosures of medical information").  Accordingly, this claim is dismissed as against all defendants.[21]

**2.     Slander, Libel, and Defamation Claims**

Not counting those claims already addressed, Plaintiff is left with claims for slander, libel, and defamation against the Joseph and Duffy Defendants.  (Am Comp. ¶¶ 28-31.)  These claims arise out of the Duffy Defendants representation of Broadspire Services, Inc. in the workers' compensation proceedings, and the Joseph Defendants' representation of

---

[21]In lieu of dismissal of his HIPAA claim, Plaintiff alternatively asks this Court to amend his complaint to include privacy law violations and to further amend his forgery, fraud, slander, and libel counts.  (Pl.'s Resp. to Praxair Mem. 10.)  Plaintiff neither cites to specific laws, nor demonstrates under what provision this Court would have jurisdiction.  This Court will thus deny Plaintiff's request.

Praxair, Inc. during that and the EEOC proceeding.  In New York, claims for slander, libel, and defamation are governed by a one-year statute of limitations.  Apionishev v. Columbia Univ., No. 09 Civ. 6471(SAS), 2011 WL 1197637, at *4 (S.D.N.Y. Mar. 25, 2011) (citing C.P.L.R. § 215(3)).  The last allegation against the Duffy Defendants dates from June 21, 2010.  (Am. Comp. ¶ 85.)  As Plaintiff's complaint was filed August 11, 2011, Plaintiff's claim against the Duffy Defendants is time-barred.  Claims arising out of statements made by the Joseph Defendants on August 1, 2008 are also time-barred.[22] Additional statements by the Joseph Defendants are alleged to have occurred on October 12, 2010, and those would not be barred.  (Am. Comp. ¶ 91.)  However, Plaintiff does not actually state what specific statements were libelous, making dismissal of them appropriate.  See Homeless Patrol, 2010 WL 2899099, at *16 ("[I]n an action for slander or libel, the plaintiff must plead the particular words about which he complains."); Caulfield v. Imagine Advisors, Inc., No. 07 Civ. 1257(DC), 2007 WL 4615504, at *10 (S.D.N.Y. Dec. 27, 2007) ("Under New York law, a claim for libel or slander must set forth the defamatory words with particularity and state what was said by whom, to whom, and when."); Daniels v. Alvarado, No. 03 Civ. 5832(JBW), 2004 WL 502561, at *7 (E.D.N.Y. Mar. 12, 2004) ("[A] lack of reference to any allegedly defamatory statements fails to comport with even the liberal pleading requirements of Federal Rule of Civil Procedure 8.").  Further claims arising out of statements made by the Joseph Defendants on August 1, 2008 would be time-barred.

---

[22]It does not appear that Plaintiff responded to the Duffy Defendants' motion to dismiss, except for submitting his proposed amended complaint.  As to the Joseph Defendants' motion, Plaintiff reiterates his equitably tolling argument, discussed earlier.  New York's Civil Practice Law and Rules permit equitable tolling of a state-law claim where "a person entitled to commence an action is under a disability because of infancy or insanity at the time the cause of action accrues."  C.P.L.R. § 208.  Having failed on this argument as to equitably tolling the EEOC deadline, he cannot now overcome New York's harsher tolling regime.  See Marshall v. Downey, No. 09 Civ. 1764, 2010 WL 5464270, at *5-*6 (E.D.N.Y. Dec. 27, 2010) (plaintiff must show continuous insanity throughout entire statute-of-limitations period).

Aside from facing dismissal on these grounds, Plaintiff's claims also fail on the basis that the statements were made during Plaintiff's workers' compensation and EEOC proceedings.   "It is well settled in New York [] that statements made in quasi-judicial proceedings . . . are protected by an absolute privilege."  Witchard v. Montefiore Med. Ctr., No. 05 Civ. 5957 JSR, 2006 WL 2773870, at *11 (S.D.N.Y. Sept. 26, 2006) (quoting Hinds v. Magna Fabrics, Inc., No. 96 Civ. 1383(DC), 1997 WL 309378, at *5 (S.D.N.Y. June 9, 1997)) (alteration in original).   Such statements include those made by attorneys while representing their clients at a Workers' Compensation Board hearing.   Conciatori v. Longworth, 259 A.D.2d 459, 460, 686 N.Y.S.2d 68 (2d Dep't 1999).   Such statements also include those submitted in response to an EEOC charge of discrimination.   See Allen v. St. Cabrini Nursing Home, Inc., 00 Civ. 8558(CM), 2001 WL 286788, at *6 (S.D.N.Y. Mar. 9, 2001) (dismissing defamation claim arising from "Statement of Position" submitted to EEOC).

Accordingly, Plaintiff's slander, libel, and defamation claims will be dismissed.

### 3.    Forgery and Fraud Claims

Plaintiff raises claims of forgery against the defendants.   However, forgery is not an independent cause of action under New York law.   See Luckett v. Bure, 290 F.3d 493, 497 (2d Cir. 2002) (forgery is a crime not giving rise to a civil cause of action).   To the extent Plaintiff wishes to recover for any alleged forgery, such a claim would be dismissed.   This Court will instead interpret Plaintiff's claim as one for fraud, and resolve it against those defendants who allegedly committed the forgery, as well as addressing Plaintiff's actual fraud claim against Kaplan.   See Miller v. N.Y. Health & Hosp. Corp., No. 00 Civ. 140(PKC), 2005 WL 2022016, at *7 (S.D.N.Y. Aug. 22, 2005) (interpreting forgery claim

41

as one sounding in fraud).  But while this expands the number of defendants, it adds little merit to Plaintiff's claim.

Under New York law, a plaintiff claiming fraud must show: "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of plaintiff; and (5) resulting damage to the plaintiff."  Crigger v. Fahnestock & Co., 443 F.3d 230, 234 (2d Cir. 2006).

Considering first Plaintiff's fraud claim against Kaplan, Plaintiff alleges that Kaplan was required to disclose to him the fact that he was not a neurosurgeon, after conveying to him instructions he was given while receiving emergency care immediately following the MVA.  Kaplan argues that Plaintiff has failed to plead his fraud claim with particularity, identified no fraudulent statements, alleged neither the time nor place in which the fraud was committed, and suffered no injury as a result.

Pursuant to Federal Rule of Civil Procedure 9(b), a plaintiff alleging fraud must "state with particularity the circumstances constituting fraud or mistake."  This requires that a complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identif[ies] the speaker, (3) state[s] where and when the statements were made, and (4) explain[s] why the statements were fraudulent."  Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006).  In so doing, plaintiffs must also "allege facts that give rise to a strong inference of fraudulent intent."  Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995). Even where a plaintiff's fraud claim is based on a fraudulent omission, "the Complaint must still allege what the omissions were, the person responsible for failing to disclose, the context of the omission and the manner in which it misled Plaintiff, and what Defendant obtained through the fraud."  Szymczak v. Nissan N. Am., Inc., No. 10 CV 7493(VB), 2011

WL 7095432, at *19 (S.D.N.Y. Dec. 16, 2011) (quoting Weaver v. Chrysler Corp., 172 F.R.D. 96, 101 (S.D.N.Y. 1997)).

Under New York law, a complaint alleging fraud must show five elements: "(1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent to defraud, and (4) reasonable reliance on the part of the [party seeking to establish fraud], (5) that causes damage to [that party]." Ehrlich v. Berkshire Life Ins. Co., No. 00 CIV. 9233, 2002 WL 368444, at *8 (S.D.N.Y. Mar. 7, 2002) (quoting Varda, Inc. v. Ins. Co. of N. Am., 45 F.3d 634, 639 (2d Cir. 1995)).  Further, "[a] duty to disclose may, in certain circumstances, also arise where 'defendant knew that the plaintiff was acting under a mistaken belief with respect to a material fact.'" Albany Molecular Research, Inc. v. Schloemer, No. 1:10-CV-210 (LEK/DRH), 2010 WL 5168890, at *6 (N.D.N.Y. Dec. 14, 2010) (quoting Frigitemp Corp. v. Fin. Dynamics Fund, Inc., 524 F.2d 275, 283 (2d Cir. 1975)).  Where a plaintiff alleges a fraudulent omission, he must show "proof that the allegedly fraudulent omission was a substantial factor in causing identifiable loss to the plaintiff." Apollo H.V.A.C. Corp. v. Halpern Const., Inc., 55 A.D.3d 855, 857, 867 N.Y.S.2d 115 (2d Dep't 2008).

Here, Plaintiff has identified a material omission, namely, that Kaplan, even after being told that Plaintiff required neurological treatment, neither referred Plaintiff to a neurosurgeon, nor ordered such treatment, while not clarifying that he was himself not a neurosurgeon.  Clearly, Kaplan knew he was not a neurosurgeon.  Further, Plaintiff apparently relied on Kaplan's omission, as evidenced by the fact that he sought neurological treatment as soon as he learned that Kaplan was not a neurologic specialist.

Plaintiff's claim stumbles, however, upon a showing of injury.  Here, the only

indication that Plaintiff suffered an injury as a result of Kaplan's omission is that "as head injuries require immediate treatment, extensive valuable time and treatment was forever lost." (Am. Comp. ¶ 59.)  In a filing dated October 17, 2011, Plaintiff clarifies that his accident occurred on March 20, 2008, at which time he was instructed to seek the assistance of a qualified neurosurgeon. (Pl.'s Resp. to Kaplan's Mot. 2, Docket No. 30.)[23] He was then treated by Kaplan on March 21, 2008.  On March 23, 2008, he experienced worsening symptoms from his head injury and went to the Kenmore Mercy emergency room, where he was diagnosed with post-concussion syndrome.   Plaintiff alleges that if Kaplan had revealed himself to be a mere M.D., as opposed to a neurosurgeon, Plaintiff could have sought treatment immediately, and the long-term effects of the post-concussion syndrome would have been minimized.

What is noteworthy is that neither Plaintiff's complaint nor his prescient response state what treatment he then received, and how this treatment, had it been received by March 22, two days after his accident, or even the same day he saw Kaplan, March 21, would have minimized his injury.  The same information is lacking for the period thereafter.

There is also the question of whether Plaintiff has pled facts sufficient to show an intent to defraud.  This entails either putting forth facts that demonstrate a defendant had both the motive and opportunity to commit fraud or, alternatively, facts that "constitute strong circumstantial evidence of conscious misbehavior or recklessness."  Lerner, 459 F.3d at 290 (quoting Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)).

---

[23]Curiously, Plaintiff's response was filed over a month prior to the actual filing of Kaplan's motion to dismiss.  Barring the possibility that Plaintiff possesses powers of premonition, this Court concludes that Plaintiff must have mistakenly understood Kaplan to have moved for dismissal at an earlier date.  (Kaplan Reply 2, Docket No. 54.)  Regardless of this fact and owing to this Court's ultimate determination that Plaintiff did not satisfy Rule 9(b)'s pleading requirements, this Court will consider Plaintiff's memorandum as a supplemental submission.

Put lightly, Plaintiff has pled no non-conclusory facts that would indicate why Kaplan would possibly want to fool him into believing he was a neurosurgeon.  Further, it was not until March 23 that Plaintiff began experiencing worsening symptoms and decided to go to the emergency room.  Thus, Plaintiff has also not shown that, on March 20, Kaplan was acting with such recklessness as to make out a claim of fraud.

Accordingly, this Court finds that Plaintiff's complaint does not satisfy the pleading with particularity requirement of Rule 9(b).  Plaintiff has not sufficiently pled what injury he suffered as a result of any delayed treatment, and has also not stated what treatment he was ultimately provided that Kaplan should have initially prescribed, nor pled facts supporting a strong inference of fraudulent intent.

On similar grounds, Plaintiff's forgery claim, converted into one for fraud, does not satisfy the necessary elements.  Crucially, even assuming that the medical release form was forged, Plaintiff has not pled that he relied on that forgery.  If anything, Plaintiff stresses how ridiculous it would be for anyone to consider it genuine.  This claim, too, is therefore denied.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's civil conspiracy, fraud, forgery, HIPAA, slander, libel, and defamation claims are dismissed as against all defendants, and defendants' motions on these claims are granted.  Plaintiff's unjust enrichment, breach of contract, breach of implied covenant of good faith and fair dealing, and unfair and deceptive trade practices claims are dismissed and Plaintiff is granted leave to replead them, but only as against the plan, plan administrator, and trustees.  Plaintiff's employment discrimination claim, which this Court has understood as arising under the ADA, is dismissed except as

to Praxair, Inc., Plaintiff's former employer, and only as to the time period within the EEOC's 300-day filing deadline.  To the extent Plaintiff's complaint is interpreted as raising any other claims against any other defendant, such claims are dismissed.

## V.  ORDERS

IT HEREBY IS ORDERED, that the Duffy Defendants' motion to dismiss (Docket No. 13) is GRANTED.

FURTHER, that the Joseph Defendants' motion to dismiss (Docket No. 14) is GRANTED.

FURTHER, that Praxair's motion to dismiss (Docket No. 19) is GRANTED in part and DENIED in part.

FURTHER, that Broadspire's motion to dismiss (Docket No. 24) is GRANTED.

FURTHER, that Old Republic's motion to dismiss (Docket No. 36) is GRANTED.

FURTHER, that Aetna's motion to dismiss (Docket No. 39) is GRANTED in part and DENIED in part.

FURTHER, that Kaplan's motion for judgment on the pleadings (Docket No. 46) is GRANTED.

FURTHER, that Brothman's motion to dismiss (Docket No. 49) is GRANTED.

FURTHER, that defendants Susan Duffy, Cory Loudenslager, Linda Joseph, Ginger Schroeder, Steve Angel, James Breedlove, Sally Savoia, John Day, Christopher Tiberio, Dawn Immohr, Richard Petronio, Garry Breitbach, Linda Morgan, Conni Krysiak, Gordon Steinagle, Broadspire Services, Inc., Crawford & Co., Inc., Ken Martino, Nicole Rudolph, Keith Wesley, Eric Clavell, Deana June, Old Republic Insurance Co., Aldo Zucoro, Ronald Williams, Mark Bertolini, Leonard Kaplan, and Melvin Brothman shall be terminated as

parties to this case.

FURTHER, that Plaintiff is granted leave to file an amended complaint. Plaintiff's amended pleading will be due 30 days from issuance of this Decision and Order. The remaining defendants' answer or other responsive pleading will be due 14 days after filing of Plaintiff's amended complaint.

FURTHER, that Plaintiff is reminded that his amended pleading is limited to the ADA claim against Praxair, Inc., and any ERISA claims against the relevant benefits plan, plan administrator, and trustees.

FURTHER, that in the event Plaintiff fails to file his amended complaint within the time period specified, the Clerk of the Court is directed to close this case as dismissed with prejudice.

SO ORDERED.


Dated:         May 29,  2012
               Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                            Chief Judge
                                        United States District Court